IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Michael L. Jones, | ) |
|                 Plaintiff, | ) Civil Action No.2:13-cv-02034-JFA-BHH |
| v. | ) **REPORT AND RECOMMENDATION** |
| Lieber CI; Perry CI Warden Larry Cartledge; Assoc. Warden Florence Mauney; Richard L. Turner, *SCDC Disciplinary Hearing Officer*; D. Filmore, *Inmate Classification Committee Chairperson*; SCDC Inmate Grievance Branch Headquarters; Perry Correctional Institution; and SC Department of Corrections, *individually and in their official capacities*, | ) **OF MAGISTRATE JUDGE** |
|                 Defendants. | ) |

The Plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Plaintiff's Motion to Dismiss Defendant Turner (Dkt. No. 33) and Defendants' Motion for Summary Judgment (Dkt. No. 27).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought the instant action in state court; Defendants filed a Notice of Removal on July 24, 2013. (See Dkt. No. 1.) On or about August 21, 2013, Plaintiff filed a Motion to Amend his Complaint; Defendants oppose amendment. (Dkt. No. 16; Dkt. No. 21.)[1] Defendants filed a Motion for Summary Judgment on September 30, 2013. (Dkt. No. 27.) By order filed October 1, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th

---

[1] Plaintiff's Motion to Amend (Dkt. No. 16) is denied in a contemporaneously issued order.

Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 28.) On or about October 22, 2013, Plaintiff filed a Motion to Dismiss Defendant R.L. Turner. (Dkt. No. 33.) Plaintiff filed his Response in Opposition to Defendants' Motion for Summary Judgment on or about October 29, 2013. (Dkt. No. 34; see also Dkt. No. 37.) Defendants filed a Response in Support of Plaintiff's Motion to Dismiss Defendant R.L. Turner. (See Dkt. No. 36.)

## **PROCEDURAL FACTS**

Plaintiff, who is currently confined at Perry Correctional Institution ("PCI" or "Perry") of the South Carolina Department of Corrections ("SCDC"), alleges claims pursuant to 42 U.S.C. § 1983 and state law. Plaintiff complains that the administration of Lieber Correctional Institution ("LCI" or "Lieber") violated his due process rights by "exhibiting gross negligence in regard to administrative regulations formulated to protect Plaintiff's liberty interest constitutional rights." (Dkt. No. 1-2 at 4 of 12.) Plaintiff complains that he was afforded "no notice of his being administratively segregated nor afford[ed] any form of a hearing . . . ." (Id.) Plaintiff asserts that Defendant Cartledge, Warden of Perry, and Defendant Mauney, Associate Warden at Perry, are abusing their discretion "arbitrarily retaining Plaintiff in administrative segregation security detention status" and "failing to provide Plaintiff with meaningful legitimate periodic review of his security detention status using status as a pretext for indefinite means of confinement violating Plaintiff's liberty interest . . . ." (Dkt. No. 1-2 at 4 of 12; see also id. at 5 of 12.) Plaintiff contends that because Defendants Cartlege and Mauney failed to "exercise slight care," SCDC is liable. (Dkt. No. 1-2 at 4-5 of 12.)

Plaintiff also alleges that Defendant Turner, a Disciplinary Hearing Officer ("DHO") with SCDC, "has a fiduciary duty of care relationship to provide Plaintiff assurance of

2

elemental fairness whenever substantial individual interest[s] are at stake." (Id. at 5 of 12.) Plaintiff contends that Defendant Turner "consciously and with wantonness failed to adhere to administrative regulations promulgated to protect [Plaintiff's] constitutional rights." (Id.) According to Plaintiff, Defendant Filmore, the Inmate Classification Committee ("ICC") chairperson at Perry, is "responsible for creating custody reviews of Plaintiff's status." (Id.) Plaintiff alleges that Defendant Filmore intentionally and consciously "fail[ed] to provide Plaintiff with meaningful minimal due process information of what type of ICC review board he was appearing before." (Dkt. No. 1-2 at 6 of 12.) He also asserts that Filmore failed to provide Plaintiff with "meaningful legitimate periodic review of his (AS-SD) status, . . . allowing (AS-SD) status as a pretext for indefinite means of confinement." (Id.)

Plaintiff further complains about the Inmate Grievance Coordinators ("IGC"), asserting, *inter alia*, that they fail to investigate Plaintiff's grievances and "exhibit[] inaction in curing deficiencies in the disciplinary and (ICC) (AS-SD) review hearing proceedings of which [they are] aware." (Id.) Plaintiff asserts that IGCs "[i]ntentionally exercis[e] inaction in curing deficiencies in the SCDC disciplinary proceeding" and fail to "assure that disciplinary hearing proceedings below were constitutionally sound." (Dkt. No. 1-2 at 9 of 12.)

More specifically, Plaintiff alleges that on April 9, 2012, he was taken to a holding cell at LCI to "allow LCI security to search his dorm cell," and then moved to a holding cell in Lieber Special Management Unit ("SMU") "under the same assumption." (Dkt. No. 1-2 at 7 of 12.) Plaintiff states that remained in the SMU holding cell from April 9, 2012, until April 11, 2012, "when Plaintiff was told he was to be confined within (LCI) (SMU) lock up unit (23) hours and (1) hour outside exercise Monday thru Friday weather permitting and security able and (24) hour lock down on the weekends." (Id.) Plaintiff complains that he "was provided no explanation other than a non-informative vague statement of investigation."

(Id.) Plaintiff alleges that he remained on lock-up "with no pre-hearing detention (72) hour notice SCDC Form 19-67 (PHO) notice nor any documentation of a (7) day review hearing." (Id.) According to Plaintiff, on May 1, 2012, he was informed that SCDC internal affairs was conducting an investigation, and though Plaintiff wrote the internal affairs division on May 3, 2012, "[n]o response was given nor was Plaintiff afforded any form of informal non-adversarial hearing to present testimony on his behalf." (Id.) Plaintiff asserts that he "remained on (SMU) under the vague statement of (IAD) investigation until June 25, 2012[,] when PCI staff attempted to serve Plaintiff with (72) hour PHO notice SCDC Form 19-67 a total of (76) days of (SMU) confinement." (Id.) Plaintiff states, "Plaintiff remained on (SMU) under the vague statement of (IAD) investigation until Plaintiff received SCDC Form 19-11 staff disposition dated (10/25/12) October 25, 2012 stating he was not on (SMU) for investigation after (198) days of being confined to (SMU) with no hearing nor timely provided SCDC Form 19-67 violating Plaintiff['s] due process where Plaintiff remains in (SMU) 357 days and counting" at the time of the filing of the Complaint. (Id.)

Plaintiff alleges that on June 7, 2012, his SMU was searched "for vague security concerns," and Corporal Musher wrote an incident report indicating that "while conducting cell strip out once property was taken into (SMU) sally port a black Samsung cell phone and charger fell from unidentified inmate property." (Id.) According to Plaintiff, he and Inmate Brockman were served with the incident report on June 8, 2012, at which time Sergeant Jones informed Plaintiff that he was being transferred to Perry on June 11, 2012. (Id. at 7-8 of 12.) Plaintiff alleges that on June 8, Inmate Brockman claimed ownership of the cell phone "and produced a written statement that he (Inmate Brockman) asked Lt. Wright to sign as a witness so Plaintiff who was to be transferred to PCI on June 11, 2012 could present [this] statement on [Plaintiff's] behalf." (Id. at 8.) Plaintiff states, "Lt. Wright informed Plaintiff he could not sign [the] statement but he would be a witness on Plaintiff's behalf to

4

state Brockman claimed ownership." (Id.) Plaintiff alleges that on June 13, 2012, he submitted SCDC Form 19-11 to his counsel substitute indicating he required Lt. Wright be called as a witness, but he never heard back. (Id.)

According to Plaintiff, Lt. McCauley came to serve Plaintiff with SCDC Form 19-67, Notice of PHD, on June 25, 2012, and Plaintiff told McCauley that he could not sign the form "stating he received (PHO) notice within (72) hours of confinement" because Plaintiff had been in SMU since April of 2012. (Id.) Plaintiff alleges he "was informed he needed to sign [the] form or he might forfeit his rights at the next day disciplinary hearing." (Id.) Plaintiff states he was taken before Defendant Turner, a Disciplinary Hearing Officer, the next day (June 26, 2012). (Id.) Plaintiff alleges that Turner (verbatim):

> arbitrarily abused his discretion allowing SCDC counsel substitute Hindenburg to arbitrarily den[y] Plaintiff his SCDC policy required SCDC employee witness, consciously with callous indifference arbitrarily used unverified confession statement that Plaintiff informed counsel substitute prior to hearing beginning he was never aware of and asserted repeatedly he never wrote to found guilty verdict violating Plaintiff['s] right to be free of forced self-incrimination, alone with reckless intent arbitrarily using clearly erroneous evidence of a grey cell phone to found guilty verdict on.

(Id.) Plaintiff alleges he was sanctioned to 358 days of Disciplinary Detention ("DD"), 450 days of loss of good-time credits, and 75 days of no telephone, canteen, or visitation privileges. (Id.)

Plaintiff also complains about Defendant Cartledge, Warden of PCI. (See Dkt. No. 1-2 at 9 of 12.) Plaintiff states,

> On January 9, 2013, Warden Larry Cartledge walked through SMU II D-Dorm Plaintiff asked Warden Cartledge why he was being arbitrarily classified as (AS-SD) for an old assaultive without a weapon disciplinary infraction from January, 2011. Warden Cartledge intentionally with callous indifference arbitrarily abused his discretion violating Plaintiff['s] constitutional right to be free from arbitrary restraint telling Plaintiff SCDC Division of Operations Deputy Director Dennis Patterson wants Plaintiff on (PCI) compound, but he (Warden Cartlege) does not want Plaintiff on "his" yard so Plaintiff will remain

5

> on (AS-SD) status as long as Plaintiff remains at (PCI) using (AS-SD) status as a pretext for indefinite lock-up (SMU) confinement.

(Id.) According to Plaintiff, Warden Cartlege has intentionally and consciously failed "to provide Plaintiff with legitimate periodic review of his (AS-SD) status." (Id.) Similarly, Plaintiff contends that Defendant Mauney, Associate Warden at Perry, "intentionally fails to provide Plaintiff with legitimate periodic review of his (AS-SD) status." (Id. at 10 of 12.)

Plaintiff alleges that ICC chairperson Defendant Filmore violated Plaintiff's due process rights "by not informing Plaintiff as to why he was appearing before (ICC) (AS-SD) initial review board nor informing Plaintiff that (ICC) board would be conducting an (AS-SD) board review" because Plaintiff "was only served a non-informative (48) hour notice of (ICC) board review not what type of review." (Id.) Plaintiff complains that Filmore "used a closed investigation," a "vague allegation of security threat group (STG) conduct with no verified proof of overt misconduct," and an approximately 600-day old "assaultive without a weapon disciplinary infraction." (Id.)

Plaintiff seeks, *inter alia*, compensatory damages, punitive damages, and injunctive relief. (Dkt. No. 1-2 at 11-12 of 12.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## **DISCUSSION**

I. Plaintiff's Motion to Dismiss Defendant Turner (Dkt. No. 33)

As noted above, Plaintiff filed a Motion to Dismiss Defendant Turner on or about October 22, 2013. (Dkt. No. 33.) In that motion, Plaintiff states that he received the order of dismissal for his Administrative Law Court appeal, wherein he raised a due process claim against Defendant Turner. (Dkt. No. 33 at 1 of 1.) Noting his "standing conviction" for possession of a cell phone, Plaintiff asserts the claim against Turner "is not ripe for § 1983 action." (Id.) Plaintiff seeks a dismissal of Defendant Turner without prejudice. (Id.) Defendants do not object to the dismissal but contend the dismissal should be with prejudice. (Dkt. No. 36.)

The undersigned recommends that Plaintiff's Motion to Dismiss Defendant Turner (Dkt. No. 33) be GRANTED.

II. Defendants' Motion for Summary Judgment (Dkt. No. 27)

Defendants contend they are entitled to summary judgment for several reasons, contending, *inter alia*, that Plaintiff "has no constitutional right to a particular classification." (Dkt. No. 27-1 at 6 of 25.) In his Response in Opposition, Plaintiff states that he "is fully aware he has no constitutional right to any particular classification custody." (Dkt. No. 34-1 at 2 of 35 n.2.) Instead, Plaintiff contends that he asserts "due process violations from inadequate procedures employed to keep Plaintiff in administrative isolation solitary." (Id. at 1 n.1.)

7

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). It is well settled that prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983) (no constitutional right under the Due Process Clause to a particular security classification or prison placement). In Sandin v. Connor, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Defendants attached several affidavits to their Motion for Summary Judgment. (See Dkt. No. 27-2; Dkt. No. 27-3; Dkt. No. 27-4.) One such affidavit was the Affidavit of Denise Bailey, an employee of Lieber. (See Dkt. No. 27-2.) According to Ms. Bailey, Plaintiff was placed in SMU at Lieber on April 11, 2012 "due to a pending investigation"; she states that pursuant to SCDC Policy OP-22.12, "[i]nmates can be placed in SMU to maintain the integrity of an investigation." (Bailey Aff. ¶ 3.) Bailey further states that Plaintiff was charged with possession of a cell phone on April 11, 2012, and "held in SMU for the pending charge." (Id. ¶ 4.) Her affidavit also states:

> 5. On April 18, 2012 and April 25, 2012, pursuant to SCDC Policy, I conducted the seven day review while Inmate Jones' disciplinary charge was pending.
>
> 6. On April 26, 2012 I was informed Inmate Jones was not convicted of the cell phone charge but was instructed to keep Inmate Jones in SMU due to the Security Threat Group ("STG") investigation pending.
>
> 7. On May 2 and 9, 2012, pursuant to SCDC policy I conducted the seven day reviews on Inmate Jones while the STG investigation was still pending.

> 8. On May 7, 2012, Inmate Jones was validated as STG-General Population ("STG-GP"). Inmates classified as STG-GP indicates that the inmate has been validated STG but is allowed to be housed in general population. However, Inmate Jones had a separation requirement with employees at Lieber and was not allowed in the general population at Lieber.
>
> 9. Inmate Jones remained in SMU at Lieber until he was transferred to Perry on June 11, 2012.

(Bailey Aff. ¶¶ 5-9.)

Defendants also attached the Affidavit of Defendant Cartledge, the Warden of Perry. (Dkt. No. 27-3.) Cartledge states in his Affidavit that Plaintiff is currently serving a 35-year sentence for armed robbery, and that since Plaintiff has been in the SCDC prison system, "he has been charged with over 60 different offenses," "[s]eventeen of [which] are considered 'assaultive' in nature." (Carteldge Aff. ¶ 4.) According to Cartledge, Plaintiff was transferred to Perry from Lieber on June 11, 2012, "due to a separation that was entered regarding the Plaintiff and employees at Lieber." (Id. ¶¶ 5-6.) Cartlege states,

> 7. Upon arrival at Perry, Inmate Jones was placed in the Special Management Unit ("SMU") due to his pending disciplinary 898 charge: possession of a cell phone from June 7, 2012. Due to the pending charge he was classified as pre-hearing detention ("PHD").
>
> 8. Per SCDC Policy OP-22.12 § 1.1 & 4.1, Inmates on PHD status may be housed in SMU and a designee will conduct a review of status every seven (7) days.
>
> 9. Perry complied with SCDC Policy OP-22.12 and reviewed Inmate Jones' PHD status every 7 days until a hearing was conducted for the charge.
>
> 10. On June 26, 2012, Inmate Jones was classified as Disciplinary Detention ("DD") because he was found guilty regarding the cell phone charge from June 7, 2012. Per policy, Inmates classified as DD are placed on SMU and reviewed every thirty (30) days.
>
> 11. SCDC complied with its policy and reviewed Inmate Jones every thirty days. *See attached staff memoranda Form 18-68, specifically dates June 30, 2012 through October 31, 2012*.

9

> 12. On November 6, 2012, Inmate Jones was classified as Security Detention ("SD"). Pursuant to SCDC Policy OP-22.12, inmates classified as SD are housed in SMU and will be reviewed every thirty days.
>
> 13. SD is a form of administrative detention or segregation within the SCDC. SD results in an individual being housed in the SMU at the inmate's respective institution.
>
> 14. SD is not a form of punishment. It is designed to segregate an inmate that has been determined to pose a threat to the security and/or safety of the institution from other inmates, and to place that individual in a housing unit that has controlled movement and an increased security presence.
>
> 15. Inmate Jones has been reviewed every 30 days pursuant to policy since his classification change on November 6, 2012.
>
> 16. At each review, I have considered Inmate Jones' prior disciplinary charges and convictions, his previous criminal convictions, and his institutional behavior. Based on these factors, I have concluded that Inmate Jones should remain classified as SD and housed in SMU.

(Cartledge Aff. ¶¶ 7-16.)

Defendants also attached the Affidavit of Laura Buttrey to their motion. (See Dkt. No. 27-5.) Buttrey, SMU caseworker for Perry, states in her Affidavit that on November 6, 2012, the Inmate Classification Committee "conducted a meeting and approved Inmate Jones classification as Security Detention ('SD')." (Buttrey Aff. ¶ 1, 3.) She further states,

> 4. The Inmate Classification Committee based its decision on its research of the inmate's disciplinary charges and convictions, the individuals current and previous criminal convictions, and the individual's previous institutional behavior. The committee discuses its research and votes as to whether or not the individual should be designated as SD.
>
> 5. Inmate Jones was classified as SD due to his assaultive disciplinary history on staff and inmates. Inmate Jones was notified of his classification change and signed the SCDC 18-1 form.
> . . .
>
> 8. Pursuant to SCDC Policy OP-22.12 "Special Management Unit," Inmates classified as SD will be reviewed every thirty (30) days. SCDC has complied with this policy.

10

> 9. Pursuant to SCDC Policy OP-22.12, the thirty (30) day reviews for inmates on SD do not require the inmate to be present.
>
> 10. At each review, I have considered Inmate Jones' prior disciplinary charges and convictions, his previous criminal convictions, and his institutional behavior. Based on these factors, I have concluded that Inmate Jones should remain classified as SD and housed in SMU.

(Buttery Aff. ¶¶ 4-10.)

As Plaintiff correctly recognizes, it is well settled that prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt, 459 U.S. at 468 (1983). A change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. In a case decided shortly after Sandin, the Fourth Circuit stated,

> In order to determine whether the inmates possessed a liberty interest, we must compare the conditions to which they were exposed in administrative segregation with those they could expect to experience as an ordinary incident of prison life. This analysis necessarily is fact specific in that it requires a determination of the conditions the prisoner maintains give rise to a liberty interest and those incident to normal prison life.

Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (citations omitted).

The undersigned recommends granting Defendants' Motion for Summary Judgment because Plaintiff's placement on SD status does not give rise to a liberty interest. In Beverati, the inmates alleged that their cells were infested with vermin and smeared with urine, that no outside recreation was permitted, that no religious services were available, and that food was served in considerably smaller portions. Beverati, 120 F.3d at 504. The Fourth Circuit held that these conditions of confinement in segregation "were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." Id.

In the instant case, Plaintiff complains that he is confined alone in his cell (and eats his meals there), is not allowed to participate in any programs, is not allowed any family visits or telephone calls, is allowed to mail only two letters a month to family and friends, is not allowed magazines or a radio, and has no canteen privileges. (See Dkt. No. 34-1 at 26-27 of 35; Dkt. No. 34-2 at 8 of 16.) According to Plaintiff's Affidavit "of Atypical and Significant Hardship Suffered from Defendants' Violation of His Due Process Constitutional Rights," he is on lockdown Monday through Friday for 23 hours, with one hour of recreation afforded, and on complete lockdown on the weekends. (Dkt. No. 20 at 1 of 4.) He asserts he is allowed one fifteen-minute shower on Monday, Wednesday, and Friday; is "allowed to clean" his cell only "once a week"; is strip searched anytime he leaves or returns to his cell; must endure lights on from 4:30 AM until 11:30 PM; and has been denied an "optical view" of female since July 4, 2012. (See generally Dkt. No. 20.)

While these conditions are unpleasant, they do not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. In fact, the conditions described in Beverati are much more severe than the conditions described by Plaintiff. See generally Beverati, 120 F.3d 500. Because no liberty interest is at issue in the case *sub judice*, the undersigned recommends granting Defendants' Motion for Summary Judgment. See Beverati, 120 F.3d at 504; Incumaa v. Stirling, Civ. A. No. 9:12-cv-3493-DCN, 2014 WL 958679, at *9 (D.S.C. Mar. 11, 2014) ("[B]esides the length of his confinement to administrative segregation, the court finds that [the plaintiff] has not alleged living conditions nearly as bad as those present in *Beverati*."); Fair v. Ozmint, C.A. No. 6:10-1268-RMG-KFM, 2011 WL 1642383, at *3-5 (D.S.C. Apr. 15, 2011), adopted at 2011 WL 1658761 (D.S.C. May 2, 2011) (the plaintiff's placement in SMU did not violate his due process rights because there was no evidence that the conditions exceeded the sentence imposed or created an atypical or significant hardship in violation

of a protected liberty interest); Edwards v. Ogunsile, C/A No. 0:09-3319-TLW-PJG, 2011 WL 779884, at *4 (D.S.C. Jan. 24, 2011), adopted at 2011 WL 780540 (D.S.C. Feb. 28, 2011) ("[T]o the extent Edwards seeks such relief in connection with the time he spent in security detention, which is apparently a term of segregation used for inmates deemed to present a security threat to the prison, he has no interest protected by the Due Process Clause."); see also United States v. Alkire, 82 F.3d 411 (4th Cir. 1996) (unpublished table decision) ("[T]here is no constitutional or federal statutory right to use of a telephone while in prison."); Backey v. S.C. Dep't of Corrs., 73 F.3d 356 (4th Cir. 1996) (unpublished table decision) (stating, on appeal after a judgment entered pursuant to a jury verdict, that the plaintiff's "allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke the due process rights he avers were violated in this case . . . ."); Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 461 (1989) (finding no right to visitation guaranteed by the Due Process Clause); Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (holding that commissary restrictions did not entitle inmate to due process protections during disciplinary proceeding).

In his Response in Opposition, Plaintiff emphasizes his contention that Defendants failed to follow SCDC policies. Such a contention does not change the result in this case, however, as a failure to follow policies, in itself, does not amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). In addition, Plaintiff complains of "due process violations from inadequate procedures employed to keep Plaintiff in administrative isolation solitary." (Dkt.

No. 34-1 at 1 n.1.) However, even if Plaintiff could establish a liberty interest, Plaintiff's claim would still fail. Plaintiff was afforded a disciplinary hearing for the cell phone charge, and when he was convicted, he was sentenced to, *inter alia*, disciplinary detention and loss of good time credits.[2] Plaintiff also appeared at a hearing before the Inmate Classification Committee on November 6, 2012, after which his custody status was changed to Security Detention. (Buttrey Aff. ¶ 3.) Plaintiff acknowledged he had notice of this hearing but asserts he had "no idea" the ICC hearing "had any negative potential." (Dkt. No. 34-2 at 4 of 16.) Of course, the fact that the ICC considered Plaintiff's record (of which he was of course aware) and rendered an unfavorable decision does not indicate Plaintiff's due process rights were violated, nor does the fact that Plaintiff has not been present at his thirty-day reviews. See also Rivera v. Byars, No. 8:12-cv-02219-JMC, 2013 WL 4697177, at *5 (D.S.C. Aug. 30, 2013) ("Additionally, to the extent Plaintiff argues Defendants have violated SCDC policies or procedures by denying his attendance at meetings to review his classification, assuming without deciding this claim is true, violations of prison policies and/or procedures do not rise to the level of a constitutional violation."). For the foregoing reasons, the undersigned recommends granting summary judgment to Defendants.[3]

---

[2] In his sur-reply, Plaintiff contends that he "has lost his earned work credits due to his administrative segregation status resulting in his maxout prison release moving back from 2022 to 2024 where it will remain until the Plaintiff is released from administration [sic] segregation and able to obtain a job." (Dkt. No. 37 at 2 of 5.) Plaintiff cites Gilchrist v. Pinson, Civ. A. No. 5:11-01746-MBS, 2013 WL 3946279 (D.S.C. July 31, 2008), to support his contention that "[c]ustody status can be a protect[ed] liberty interest, due to the claimed relationship between custody status, earned work credits, and the duration of a prisoner's confinement." (Dkt. No. 37 at 1 of 5.) Of course, Plaintiff is citing not to Judge Seymour's ruling in Gilchrist, but instead to the Gilchrist plaintiff's argument. The fact that Plaintiff is not currently able to earn work credits does not implicate a liberty interest. See O'Bar v. Pinion, 953 F.2d 74, 83-84 (4th Cir. 1991); see also Howard v. S.C. Dep't of Corrs., 399 S.C. 618, 733 S.E.2d 211 (2012).

[3] The undersigned notes that Defendants seek summary judgment for additional reasons. To the extent Plaintiff complains about the grievance procedure or responses to his grievances, such a claim fails. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]here is no constitutional right to participate in grievance proceedings.") Defendants also contend they are entitled to qualified immunity. In light of the undersigned's conclusion that no liberty interest is at issue in the instant

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Plaintiff's Motion to Dismiss Defendant Turner (Dkt. No. 33) be GRANTED, and that Defendant Turner be dismissed. It is further RECOMMENDED that the Motion for Summary Judgment (Dkt. No. 27) be GRANTED as to the remaining Defendants on Plaintiff's federal claims, and that Plaintiff's state law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>United States Magistrate Judge

March 24, 2014
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

case, the undersigned further recommends concluding that Defendants are entitled to qualified immunity.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).